# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIANNA STARTS, on behalf of herself and all other persons similarly situated, known and unknown, ) ) ) ) | Case No. 1:19-cv-01575 |
| *Plaintiff,* ) ) | Judge Mary M. Rowland |
| v. ) ) ) | |
| LITTLE CAESAR ENTERPRISES, INC., ) ) | |
| *Defendant.* ) | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
John Frawley
jfrawley@flsalaw.com
**Werman Salas P.C.**
77 W. Washington Street, Suite 1402
Chicago, IL 60602
(312) 419-1008

*Attorneys for Plaintiff and
Others Similarly Situated*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Procedural History | 1 |
| III. | Summary of Settlement Terms | 3 |
| | A. The Proposed Settlement Class | 3 |
| | B. Settlement Fund; Allocation of the Fund; Payments to Class Members | 3 |
| | C. Uncashed Checks Will Be Distributed to the Unclaimed Property Fund | 4 |
| | D. Defendant's Representations of Compliance with BIPA | 4 |
| | E. Release of Claims | 5 |
| | F. Settlement Administration | 5 |
| | G. Notice of Class Action Settlement | 5 |
| | H. Distribution of Notice | 6 |
| | I. Service Awards | 6 |
| | J. Attorney's Fees and Costs | 7 |
| IV. | The Court Should Grant Preliminary Approval | 7 |
| | A. Settlement of Class Action Litigation is Favored | 7 |
| | B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2) | 8 |
| |    1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A) | 8 |
| |    2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B) | 9 |
| |    3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C) | 9 |
| |    4. Costs, risks, and delay of trial and appeal | 9 |
| |    5. Effectiveness of the proposed method of distributing relief to Class Members | 9 |
| |    6. The terms of the proposed attorney fee award, including timing of payment | 10 |
| |    7. Any Agreement required to be identified under Rule 23(e)(3) | 10 |
| |    8. The Settlement Treats Settlement Class Members Equitably | |

      Relative to Each Other – Rule 23(e)(2)(D) .................................. 10
  C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii) .............. 11
    1. Certification Will Be Appropriate Under Rule 23(a) ................... 11
      a. Numerosity ......................................................................... 11
      b. Commonality ...................................................................... 11
      c. Typicality ........................................................................... 12
      d. Adequacy of the Class Representative ............................. 12
        i. The Class Representative has an interest in the litigation and has no conflict with Class Members ................................ 12
        ii. Class Counsel is experienced and qualified ................................................................ 13
    2. Certification Will Be Appropriate Under Rule 23(b) ................... 13
      a. Common questions predominate ....................................... 14
      b. A class action is a superior mechanism ........................... 14
  D. Plaintiff's Notice Program and Class Notice Form Merit Approval ........ 15
V. Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**
*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) .................................................................................................. 14

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) .................................................................................... 7

*Cothron v. White Castle Systems, Inc.*
  Case No. 20-3202 (7th Cir.) ....................................................................................... 2

*Gammon v. G.C. Servs., L.P.*
  162 F.R.D. 313 (N.D. Ill. 1995) ................................................................................ 12

*Gaspar v. Linvatec Corp.*
  167 F.R.D. 51 (N.D. Ill. 1996) .................................................................................. 11

*General Tel. Co. of Sw. v. Falcon*
  457 U.S. 147 (1982) .................................................................................................. 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
  339 F.R.D. 11 (E.D.N.Y. Jan. 28, 2019) ..................................................................... 8

*Kernats, et al. v. Comcast Corp.*
  Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219 (N.D. Ill. Oct. 20, 2010) ......... 14

*Kou Thao Vang v. KeyTronicEMS*
  No. 17-cv-5408, 2019 WL 337589 (D. Minn. Jan. 28, 2019) .................................... 8

*McDonald v. Symphony Bronzeville*
  Case No. 126511 (Ill. Sup. Ct.) ................................................................................... 2

*Murray v. GMAC Mortg. Corp.*
  434 F.3d 948 (7th Cir. 2006) .................................................................................... 14

*Oshana v. Coca-Cola Co.*
  472 F.3d 506 (7th Cir. 2006) .................................................................................... 12

*Pierre v. Midland Credit Mgmt., Inc.*
  No. 16 C 2895, 2017 WL 1427070 (N.D. Ill. Apr. 21, 2017) ................................... 13

*Tims v. Blackhorse Carriers, LLC*
  Case No. 20-0563 (Ill. App. Ct. 1st Dist.) ................................................................... 2

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .................................................................................................. 11

**Statutes**
Illinois Biometric Information Privacy Act ........................................................................... passim

**Other Authorities**
2 Herbert B. Newberg & Alba Conte
    *Newberg on Class Actions* § 11.41 (3d ed. 1992) ........................................................ 7, 8

*Manual for Complex Litigation* ................................................................................................ 7, 8

**Rules**
Fed. R. Civ. P. 23 ................................................................................................................. passim

I. **Introduction**

Plaintiff and proposed class representative Brianna Starts ("Plaintiff" or "Settlement Class Representative") is a former hourly Illinois employee of Defendant Little Caesar Enterprises, Inc. ("Defendant"). In this lawsuit, Plaintiff alleges that Defendant violated the Illinois Biometric Information Privacy Act ("BIPA") by utilizing a timekeeping system which scanned Plaintiff and Settlement Class Members' fingers without complying with BIPA's requirements. Defendant denied and continues to deny Plaintiff's allegations. Through a private mediation with retired Magistrate Judge Morton Denlow, the Parties reached a $6,997,810 class settlement for 8,407 Settlement Class Members.[1] Because the settlement is fair, reasonable, adequate, and meets all requirements under Rule 23, the Court should grant preliminary approval and enter the Parties' proposed order, attached as Exhibit 4.

II. **Procedural History** (Ex. 1, Settlement Agreement, § I)[2]

On January 29, 2019, Nivea Lenoir, a former plaintiff and employee of Defendant, filed the Action in the Circuit Court of Cook County on behalf of herself and others similarly situated, alleging that Defendant violated BIPA. Defendant denied and continues to deny the claims asserted by Plaintiff. Exhibit 2, Werman Declaration ¶ 7.

On March 6, 2019, Defendant removed the Action to this Court. On August 21, 2019, Plaintiff Starts joined the Action as a named Plaintiff and filed the First Amended Complaint along with Ms. Lenoir. On September 20, 2019, Defendant moved to dismiss the First Amended Complaint for failure to state a claim. On August 7, 2020, the Court denied Defendant's motion to dismiss. Shortly after, the Court ordered the Parties to complete a 150-day period of class

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"), which is attached as Exhibit 1.

[2] Citations to the Settlement Agreement are in the headings of this Memorandum to avoid unnecessary multiplication of in-text citations.

discovery, during which the Parties exchanged documents, exchanged written interrogatories, and completed depositions. On May 24, 2021, the Parties entered a joint stipulation dismissing Ms. Lenoir from the lawsuit. Exhibit 2, Werman Declaration ¶ 8.

On October 19, 2021, the Court stayed the Action pending the outcomes in three BIPA appeals (*McDonald v. Symphony Bronzeville*, Case No. 126511 (Ill. Sup. Ct.), *Tims v. Blackhorse Carriers, LLC*, Case No. 20-0563 (Ill. App. Ct. 1st Dist.), and *Cothron v. White Castle Systems, Inc.*, Case No. 20-3202 (7th Cir.)). The Court lifted those stays on February 15, 2023. Exhibit 2, Werman Declaration ¶ 9.

On March 21, 2023, Plaintiff filed a Second Amended Class Action Complaint. On March 31, 2023, Plaintiff filed her Motion for Class Certification. Defendant filed a response to Plaintiff's Motion for Class Certification on April 28, 2023, and Plaintiff filed her reply in support of her Motion for Class Certification on May 22, 2023. The Court then stayed merits discovery pending a resolution of Plaintiff's Motion for Class Certification. Further, in an effort to reach a resolution of the Action, the Parties discussed the potential for a class-wide settlement.

On June 25, 2023, and again on August 16, 2023, the Parties participated in a mediation with retired Magistrate Judge Morton Denlow and, following arms-length negotiations, reached an agreement resolving all matters in the Action, as set forth in this Settlement Agreement. Exhibit 2, Werman Declaration ¶ 10. That settlement is now memorialized in the Settlement Agreement attached here as Exhibit 1.

Under the Settlement Agreement, Defendant denies all allegations of wrongdoing or liability, including that it violated BIPA. Despite the belief that it is not liable and has good defenses to the claims alleged in the Action, Defendant has concluded that settlement is desirable

2

to avoid the risk posed by Plaintiff's claims for statutory damages under BIPA and additional costs and expenses of continued litigation.

Similarly, Plaintiff and Settlement Class Counsel have investigated the facts and the law regarding the Action and have concluded that a settlement according to the terms set forth below is in the best interests of Plaintiff and the Settlement Class. They agreed to settle the Action recognizing (a) the existence of complex and contested issues of law and fact; (b) the risks inherent in litigation; (c) the likelihood that future proceedings will be unduly protracted and expensive absent settlement; (d) the benefits derived from the Settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (e) Plaintiff's and Settlement Class Counsel's determination that the Settlement is fair, reasonable, adequate, and will substantially benefit the Settlement Class Members. Exhibit 2, Werman Declaration ¶ 12.

**III.    Summary of Settlement Terms**

    **A.    The Proposed Settlement Class** (Ex. 1, Settlement Agreement, § III)

The Settlement Class Representative seeks preliminary approval of the following class:

All employees of Defendant who enrolled in or used a finger-scan timekeeping system while working for Defendant in Illinois from January 29, 2014 through January 14, 2019.

The "Class Period" is from January 29, 2014 to January 14, 2019. Defendant has represented that there are 8,407 Settlement Class Members.

    **B.    Settlement Fund; Allocation of the Fund; Payments to Class Members** (Ex. 1, Settlement Agreement, § IV.2)

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Fund of $6,997,810 to resolve the claims in this case on a class action basis. The Gross Fund represents the maximum total amount that Defendant (or any other Releasee) shall be obligated to pay under this Settlement, unless the number of Settlement Class Members is greater than 8,407 Class Members,

in which case the Gross Fund shall increase by $832.37 for each additional Settlement Class Member above 8,407 persons. None of the Gross Fund shall revert back to Defendant.

The term "Net Fund" is the Gross Fund minus the following deductions, which are subject to Court approval: Settlement Class Counsel's attorney fees (estimated to be $2,332,603.33); Settlement Class Counsel's litigation expenses (estimated to be no more than $30,000.00); the Settlement Administrator's costs (estimated to not exceed $35,500); and the Settlement Class Representative's Service Award (estimated to be $15,000). The estimated amount of the Net Fund is approximately $4,584,706.67, or a net amount of $545.34 per Settlement Class Member. Settlement Class Members are not required to submit a claim form to receive payment.

### C. Uncashed Checks Will Be Distributed to the Unclaimed Property Fund
(Ex. 1, Agreement, § IV.9)

Any checks that remain uncashed after one hundred and eighty (180) days from the date they are issued by the Settlement Administrator shall be remitted to the State of Illinois Unclaimed Property Fund. This will enable Settlement Class Members to request their settlement payments even if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/app/faq-general (last visited August 18, 2023) (Illinois "serves as a custodian of the assets [of unclaimed property] and never takes ownership of them.").

### D. Defendant's Representations of Compliance with BIPA
(Ex. 1, Settlement Agreement, § 16)

Defendant has or will delete, within 60 days of final settlement approval, all finger-scan data on the timekeeping system for its active and former employees, except for employees who have pending claims or whose data is subject to preservation obligations.

E. **Release of Claims** (Ex. 1, Settlement Agreement, § IV.3.b)

Subject to Final Approval by the Court, Settlement Class Participants will, upon the Effective Date, release all claims, suits, actions, controversies, demands, and/or causes of action, premised upon statute, contract, common law or otherwise, whether seeking liquidated or actual damages, penalties, specific performance, injunctive relief, attorneys' fees, costs, interest or any other relief, against Defendant or other Releasees that arise out of, relate to or are connected with the alleged violation of or non-compliance with BIPA, as set forth in the Class Action Complaint in the Lawsuit against Defendant, and/or the alleged scanning, capture, collection, storage, possession, transmission, purchase, receipt through trade and otherwise, sale, lease, trade, profit, disclosure, re-disclosure, dissemination, transmission, protection, conversion and/or the alleged use of biometric identifiers, biometric information or other biometric data in connection with Defendant's timekeeping system, whether pursuant to BIPA or any other federal, state or local law, including common law, regardless of whether such causes of action or claims are known or unknown, filed or unfiled, asserted or unasserted, and/or existing or contingent. The only Settlement Class Members not subject to the foregoing release are those who timely and validly exclude themselves from the Settlement.

F. **Settlement Administration** (Ex. 1, Settlement Agreement, § IV.4.)

The Parties have selected Rust Consulting to act as the Settlement Administrator. The Settlement Administrator's costs are capped at $35,500, which shall be paid from the Gross Fund.

G. **Notice of Class Action Settlement** (Ex. 1, Settlement Agreement, §§ IV.5.b, IV.10.b and Attach. A)

Among other things, Plaintiff's proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how to receive payment, request exclusion, and submit an objection; (3) how to obtain more information

5

about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Awards; and (6) the Final Approval Hearing details.

### H. Distribution of Notice (Ex. 1, Settlement Agreement, §§ IV.5, IV.10.b)

The Settlement Administrator will implement a robust class notice program to ensure that Settlement Class Members learn of their rights in the Settlement. First, the Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run a database search to locate an updated address and shall promptly mail the Notice to the updated address. Second, where personal email addresses are available for Settlement Class Members, the Settlement Administrator shall send the following email:

- Email subject: "Legal Notice of Proposed Class Action Settlement."

  Email body: "A settlement has been reached in a class action lawsuit against Little Caesar Enterprises ("Defendant") alleging that Defendant violated the Illinois Biometric Information Privacy Act ("BIPA") by utilizing a timekeeping system which scanned employees' finger(s) working in Illinois without complying with BIPA's requirements. While Defendant has denied any legal violation occurred, the parties have reached a compromise to end the lawsuit, and avoid the related time, expense, and uncertainty of further litigation. The settlement is on behalf of all employees of Defendant who enrolled in or used a finger-scan timekeeping system while working for Defendant in Illinois from January 29, 2014 through January 14, 2019. To learn about the settlement and your rights in it, please review the Notice of Class Action Settlement which is attached to this email."

### I. Service Awards (Ex. 1, Settlement Agreement, § IV.8)

Under the Settlement Agreement, Class Counsel may request that the Court award the Settlement Class Representative up to $15,000 as a Service Award for her work in prosecuting this lawsuit on behalf of the Settlement Class, answering written discovery, giving a deposition,

assisting at the mediation, and recovering money for the Settlement Class. Settlement Class Counsel will file the request for the Service Award with their motion for attorney fees and costs, described below.

### J. Attorney's Fees and Costs (Ex. 1, Settlement Agreement, §§ IV.5.e., IV.7)

Under the Settlement Agreement, Settlement Class Counsel may request that the Court award them up to one-third of the Gross Fund as attorney's fees plus their litigation expenses. Settlement Class Counsel will file their request for attorney's fees and costs within 28 days after entry of an order granting preliminary approval of the Settlement. The Notice will advise Settlement Class Members about how to review the request for attorney's fees and costs. This will enable Settlement Class Members to see the request when deciding whether to exclude themselves from the Settlement or object to it.

## IV. The Court Should Grant Preliminary Approval

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

7

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

Rule 23 was amended effective December 1, 2018. Before then, Rule 23 did not address standards for preliminary approval. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 339 F.R.D. 11, 28 (E.D.N.Y. Jan. 28, 2019). At the preliminary approval stage, district courts decided whether the proposed settlement fell "within the range of possible approval." *Kou Thao Vang v. KeyTronicEMS*, No. 17-cv-5408, 2019 WL 337589, at *1 (D. Minn. Jan. 28, 2019). "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card*, 330 F.R.D. at 28 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Settlement Class Counsel and the Settlement Class Representative pursued this case vigorously on behalf of the potential class. Settlement Class Counsel briefed and defeated Defendant's motion to dismiss (ECF No. 50), answered written discovery served on Plaintiff (and former Plaintiff Nivea Lenior), served discovery on Defendant and obtained relevant documents, defended Plaintiff's and (Lenoir's) depositions, took a Rule 30(b)(6) deposition, and fully and

extensively briefed a motion for class certification. At mediation, Settlement Class Counsel negotiated a settlement that obtains meaningful non-reversionary monetary relief, without a claims process, and an appropriate release of claims.

### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel, with the assistance of neutral mediator and retired federal Magistrate Judge Morton Denlow, over the course of two days. The Settlement was not collusive. Exhibit 2, Werman Declaration ¶ 17.

### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

The $6,997,810 Gross Fund represents a gross recovery of $832.37 per Settlement Class Member prior to deductions from the Gross Fund for attorneys' fees and litigation costs, Settlement Class Representative Service Award, and Settlement Administrator costs. The recovery here compares favorably with or exceeds other BIPA class action settlements with class sizes over 1,000 persons where courts have granted preliminary and final approval. *See* Exhibit 3, BIPA Settlement Chart. The Court should further evaluate the adequacy of relief based on the factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), which the Settlement satisfies.

### 4. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. If the case had not settled, it is possible that Plaintiff would have lost her pending motion for class certification. If Plaintiff had prevailed on class certification, the case would have continued on to the merits, including expert discovery, summary judgment motions, and potentially trial. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Settlement Class Members now. Exhibit 2, Werman Declaration ¶ 16.

### 5. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail and, where available, email.

Exhibit 1, Settlement Agreement, § IV.10.b. This comprehensive notice program satisfies due process and Rule 23. Unlike many other BIPA settlements, the Settlement Administrator will distribute funds to Settlement Class Members via direct checks without any requirement to first submit a claim form. Since Defendant has contact information for Settlement Class Members, direct distribution of checks is superior to a claims process. *See* Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide, at 3 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.").

### 6. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of up to one-third of the Gross Fund plus litigation costs. Exhibit 1, Agreement § IV.7. The maximum fee that Settlement Class Counsel may request is equal to or below the fees awarded in the BIPA class settlements cited in the attached BIPA Settlement Chart. Exhibit 3. The Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Exhibit 1, Agreement § IV.5.j.

### 7. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is Exhibit 1 to this Memorandum. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

### 8. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards to Settlement Class Members from the Net Settlement Fund on a *pro rata* basis. Exhibit 1, Agreement, § IV.2.

### C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

Plaintiff's Motion for Class Certification was fully briefed (ECF Nos. 98, 101, 104). Those arguments are not repeated in detail here, but Plaintiff contends that class certification is warranted for the following reasons.

#### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that her claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

##### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 8,407. Exhibit 1, Agreement, § III, which satisfies numerosity.[3]

##### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect biometric data of Class

---

[3] The implicit ascertainability requirement is also satisfied because the Settlement Class is objectively defined and all Class Members are identified in Defendant's employment records. *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 193 (N.D. Ill. 2018).

Members without following BIPA's notice and consent requirements? Answering this common question resolves the question of liability for all Class Members. Commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id* (quotations and citation omitted)).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendant's use of an alleged biometric finger scan system for its Illinois employees allegedly without following BIPA's notice and consent requirements. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that she is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

#### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Settlement Class Representative alleges the same claims as Settlement Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [themselves] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* No. 16 C 2895, 2017 WL 1427070,

at *8-9 (N.D. Ill. Apr. 21, 2017). The Settlement Class Representatives exhibited competence throughout the case, including by answering written discovery and sitting for a deposition in support of the class claims in the case.

### ii. Class Counsel is experienced and qualified

Settlement Class Counsel will also fairly and adequately protect the interests of the Settlement Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are highly experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including numerous other BIPA class actions. Exhibit 2, Werman Declaration ¶¶ 13, and accompanying Firm Resume. In this case, Settlement Class Counsel demonstrated their commitment to the class by briefing and defeating Defendant's Motion to Dismiss, by serving and obtaining written discovery from Defendant, by taking and defending depositions, fully briefing Plaintiff's motion for class certification, and by negotiating a favorable resolution at the mediation. Exhibit 2, Werman Declaration, ¶ 15. By their actions in this case and relevant experience, Class Counsel are well-positioned to protect the interests of Class Members.

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### a. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiffs bear the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy? The common question predominating in this case is whether Defendant collected Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is 8,407 individual lawsuits. As each case would require resolution of identical factual and legal issues, the resulting efficiencies achieved by class-wide resolution are obvious.

### D. Plaintiff's Notice Program and Class Notice Form Merit Approval
(Ex. 1, Settlement Agreement, §§ IV.5(b), IV.10(b) and Attach. A)

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)

Fed. R. Civ. P. 23(c)(2)(B). The proposed Notice exceeds this bare minimum and complies with the requirements of Rule 23(c)(2)(B). And the plan for the Settlement Administrator to distribute individual Notices directly to Settlement Class Members is reasonable.

## V. Conclusion

The Settlement makes significant monetary relief available to Settlement Class Members who might have recovered nothing without it. The Court should grant preliminary approval.

**Dated:** September 1, 2023

Respectfully submitted,

*/s/Douglas M. Werman*
One of Plaintiff's Attorneys

15