UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIANNA STARTS, on behalf of herself and all other persons similarly situated, known and unknown, | ) ) ) | Case No. 1:19-cv-01575 |
| | ) | |
| *Plaintiff,* | ) | Judge Mary M. Rowland |
| | ) | |
| v. | ) | |
| | ) | |
| LITTLE CAESAR ENTERPRISES, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.      Introduction**

On September 8, 2023, this Court granted preliminary approval of the Parties' $6,997,810 non-reversionary Settlement resolving claims under the Illinois Biometric Information Privacy Act ("BIPA").[1] After preliminary approval, the Settlement Administrator successfully distributed individual Class Notices to over 92% of the Settlement Class Members. The Notices informed the 8,398 Settlement Class Members of their rights in the Settlement, the right to request to be excluded from the Settlement, and the right to object to the fairness of the Settlement.[2] No Settlement Class Members objected to the Settlement and only two requested to be excluded. The Settlement Class's positive reaction to the Notice process reflects the fairness of the Settlement. Based on the successful Notice process and strength of the Settlement, the Court should grant final approval at the hearing on December 22, 2023.

---

[1]      Capitalized terms not defined here are defined in the Parties' Settlement Agreement, which is attached here as Exhibit 1.

[2]      At preliminary approval, the Parties reported the class size was 8,407 persons.

**II.      Factual, Legal, and Procedural History** (Ex. 1, Settlement Agreement, § I.)

The factual, legal, and procedural history of this case are summarized in Plaintiff's Motion

for Preliminary Approval and in Section I of the Settlement Agreement.

**III.     Summary of Settlement Terms**

**A.  The Settlement Class** (Ex. 1, Settlement Agreement, § III.)

This Settlement applies to the following Settlement Class, which the Court preliminarily

certified on September 8, 2023:

> All employees of Defendant who enrolled in or used a finger-scan timekeeping system
> while working for Defendant in Illinois from January 29, 2014 through January 14, 2019.

**B.  Settlement Fund; Allocation of the Fund; Payments to Settlement Class
Participants** (Ex. 1, Settlement, § IV.2)

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Fund of

$6,997,810 to resolve the claims in this case on a class action basis. The Gross Fund represents the

maximum total amount that Defendant (or any other Releasee) shall be obligated to pay under this

Settlement. None of the Gross Fund shall revert back to Defendant.

The term "Net Fund" is the Gross Fund minus the following deductions, which are subject

to Court approval: Settlement Class Counsel's attorney fees (*i.e.*, $2,332,603.33); Settlement Class

Counsel's litigation expenses in the amount of $18,178.67; the Settlement Administrator's costs

in the amount of $35,500; and the Settlement Class Representative's Service Award in the amount

of $15,000.  Exhibit 2, Declaration of Douglas M. Werman ¶13 (herein "Ex. 2, Werman Decl.

¶_"). The estimated amount of the Net Fund is approximately $4,596,528, or a net amount of

$547.46 per Settlement Class Member. *Id.* Settlement Class Members are not required to submit a

claim form to receive payment.

1

**C.      Uncashed Checks Will Be Distributed to the Unclaimed Property Fund**
(Ex. 1, Agreement, § IV.9)

Any checks that remain uncashed after one hundred and eighty (180) days from the date

they are issued by the Settlement Administrator shall be remitted to the State of Illinois Unclaimed

Property Fund. This will enable Settlement Class Members to request their settlement payments

even if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/app/faq-

general (last visited August 18, 2023) (Illinois "serves as a custodian of the assets [of unclaimed

property] and never takes ownership of them.").

**D.      Defendant's Representations of Compliance with BIPA**
(Ex. 1, Settlement Agreement, § IV.16)

Defendant has or will delete, within 60 days of final settlement approval, all finger-scan

data on the timekeeping system for its active and former employees, except for employees who

have pending claims or whose data is subject to preservation obligations.

**E.      Release of Claims** (Ex. 1, Settlement Agreement, § IV.3.b)

Subject to Final Approval by the Court, Settlement Class Participants will, upon the

Effective Date, release all claims, suits, actions, controversies, demands, and/or causes of action,

premised upon statute, contract, common law or otherwise, whether seeking liquidated or actual

damages, penalties, specific performance, injunctive relief, attorneys' fees, costs, interest or any

other relief, against Defendant or other Releasees that arise out of, relate to or are connected with

the alleged violations of or non-compliance with BIPA, as set forth in the operative Class Action

Complaint in the Action against Defendant, and/or the alleged scanning, capture, collection,

storage, possession, transmission, purchase, receipt through trade and otherwise, sale, lease, trade,

profit, disclosure, re-disclosure, dissemination,  protection, conversion and/or use of biometric

identifiers, biometric information or other biometric data in connection with Defendant's

timekeeping system, whether pursuant to BIPA or any other federal, state or local law, including

common law, regardless of whether such causes of action or claims are known or unknown, filed or unfiled, asserted or unasserted, and/or existing or contingent. The only Settlement Class Members not subject to the foregoing release are those who timely and validly excluded themselves from the Settlement.

**F.**     **Settlement Administration** (Ex. 1, Settlement Agreement, § IV.4.)

The Parties selected Rust Consulting to act as the Settlement Administrator. The Settlement Administrator's costs are capped at $35,500, which shall be paid from the Gross Fund.

**G.**     **Notice of Class Action Settlement** (Ex. 1, Settlement Agreement, §§ IV.5.b, IV.10.b and Attach. A)

The Notice of Class Action Settlement ("Class Notice") the Settlement Administrator issued to Settlement Class Members explained the following to Settlement Class Members: (1) what the Settlement is about; (2) how to receive payment, request exclusion, and submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Award; and (6) the Final Approval Hearing details.

**H.**     **Service Award** (Ex. 1, Settlement Agreement, § IV.8)

Under the Settlement Agreement, Class Counsel may request that the Court award the Settlement Class Representative up to $15,000 as a Service Award for her work in prosecuting this lawsuit on behalf of the Settlement Class, answering written discovery, giving a deposition, assisting at the mediation, and recovering money for the Settlement Class. Settlement Class Counsel filed the request for the Service Award with their motion for attorney fees and costs. ECF No. 116.

**I.   Attorney's Fees and Costs** (Ex. 1, Settlement Agreement, §§ IV.2, IV.7)

Under the Settlement Agreement, Settlement Class Counsel may request that the Court award them up to one-third of the Gross Fund as attorney's fees plus their litigation expenses. Settlement Class Counsel filed their request for attorney's fees and costs on October 6, 2023. ECF No. 116. The Notice advised Settlement Class Members about how to review the request for attorney's fees and costs.

**IV.    The Class Notice Process Was Successful** (Ex. 3, Decl. of Settlement Administrator)

Rust Consulting ("Rust") was engaged by the Parties to provide services relating to settlement administration. Rust's duties included: a) preparing, printing and mailing of the *Notice Of Class Action Settlement* ("Class Notice"), via mail and e-mail to available e-mail addresses; b) tracking of exclusions and objections; and c) for such other tasks as the Parties mutually agree or the Court orders Rust to perform. Ex. 3, Declaration of Abigail Schwartz for Rust Consulting, Inc., ¶ 3.

The Settlement Administrator implemented a robust class notice program informing Settlement Class Members of their rights in the Settlement. To facilitate the Notice process, Rust obtained a mailing address – Starts v Little Caesars Settlement Administrator, c/o Rust Consulting, Inc - 8407, P.O. Box 2396, Faribault, Minnesota 55021-9096 – to receive exclusions, objections, undeliverable Class Notices and other communications regarding the Settlement. Ex. 3, ¶ 4. Rust also obtained a toll-free telephone number of (888) 356-0296 for Settlement Class Members to call with questions regarding the Settlement. Rust also obtained an email address of admin@LCEBIPAclaim.com for receiving communications about the Settlement.  The toll-free number and email address were included in the Class Notice.  *Id*. at ¶¶ 5-6.

On or about September 11, 2023, Rust received the form of the Class Notice from Class Counsel. A draft of the formatted Class Notice was prepared by Rust and approved by the Parties. Ex. 3, ¶ 7, Exhibit A. On or about September 21, 2023, Counsel for the Defendant provided Rust with a mailing list containing Settlement Class Member's names, last known addresses, available e-mail addresses and telephone numbers ("Class List"). The Class List contained data for 8,398 Settlement Class Members. Ex. 3, ¶ 8. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. Ex. 3, ¶ 9. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Class Notice. *Id.*

On October 6, 2023, Class Notices were mailed to 8,398 Settlement Class Members contained in the Class List via First Class mail. Ex. 3, ¶ 10. Of the 8,398 Settlement Class Members who were mailed a Class Notice via First Class mail, 1,184 Settlement Class Members were also sent a Class Notice via e-mail to an available e-mail address in the Class List. *Id.* The Class Notice advised Settlement Class Members that they could submit an exclusion and/or objection postmarked by December 5, 2023. *Id.* Rust performed 1,577 address traces on Class Notices returned as undeliverable for the first time as of December 5, 2023. Ex. 3, ¶ 11. The address trace utilizes the Settlement Class Member's name and previous address for locating a current address. *Id.* Of the 1,577 traces performed, 1,177 more current addresses were obtained and Class Notices were promptly re-mailed to those Settlement Class Members via First Class mail. *Id.* Of the 1,577 traces performed, Rust did not obtain updated addresses for 400 undeliverable Class Notices. *Id.* Of the 1,177 Class Notices mailed to a more current address

5

identified from trace, 195 Class Notices were returned to Rust as undeliverable a second time. *Id.* As of this date, 595 Class Notices remain undeliverable. *Id.*

As of this date, 32 Class Notices were returned by the Post Office with forwarding addresses attached as of December 5, 2023. *Id.*, ¶ 12. Rust promptly re-mailed Class Notices to those Settlement Class Members via First Class mail. *Id.*

Rust received two exclusions from Class Members. Of the exclusions received, two (2) were submitted with a postmark on or before December 5, 2023. *Id.*, ¶ 13. Rust received zero (0) objections. *Id.* at ¶ 14

## V.  Final Approval Is Warranted

### A.  The Proposed Settlement Is Fair, Reasonable, and Adequate

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class…may be settled…only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl*, 309 F.3d at 986. Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns." As a result, the Court should also take into account the following factors set out by the Seventh Circuit: "(1) the strength

of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the

complexity, length, and expense of further litigation; (3) the amount of opposition to the

settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent

counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v.*

*Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) ("*Wong* factors").

Courts in the Seventh Circuit continue to analyze the *Wong* factors in tandem with the Rule

23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA*

*Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019); *Charvat v. Valente*,

No. 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019); *Hale v. State Farm Mut.*

*Auto. Ins. Co.*, No. 12- 0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018). "'The most

important factor relevant to the fairness of a class action settlement is the strength of plaintiff's

case on the merits balanced against the amount offered in the settlement.'" *Wong,* 773 F.3d at 863-

64 (7th Cir. 2014) (quoting *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106,

1132 n.44 (7th Cir. 1979)). The following discussion, beginning with the *Wong* factors,

demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

**B.** ***Wong* Factors 1 & 2: Strength of the Case for Plaintiff and the Settlement Class on the Merits, Balanced Against the Extent of the Settlement Offer; the Complexity, Length, and Expense of Further Litigation**

The Settlement represents a gross recovery of approximately $833.46 per Settlement Class

Member. Ex. 2, Werman Decl. ¶8. That is an outstanding result for a BIPA class the size of the

class at-issue in this litigation. *Id.* The fact that the Settlement Fund is non-reversionary is notable,

without a monetary benefit or reversion to the Defendant.[3] *Id*., at ¶ 9. Yet, Plaintiff anticipates a

---

[3]    *See, e.g., Zhirovetskiy*, 2017-CH-09323 (reverted up to $490,000 of funds to defendant); *Rosenbach v. Six Flags Ent. Corp.*, No. 2016-CH-00013 (Il. Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving reversionary fund, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant); *Lark v. McDonald's USA, LLC*, No. 17-L-559 (Il. Cir. Ct. St. Clair Cnty.

high check cashing rate because of the 92% notice delivery rate (7,803/8,398) —indicating the Settlement Administrator overwhelmingly has good addresses to issue checks to Settlement Class Members. *Id.*

If the litigation had continued, it also would have been complex, expensive, and protracted. It is possible that Plaintiff would have lost her pending motion for class certification. *Id.*, at ¶ 14. If Plaintiff had prevailed on class certification, the case would have continued on to the merits, including expert discovery, summary judgment motions, and potentially trial. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Settlement Class Members now. *Id.*

**C. *Wong* Factors 3 & 4: Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement**

The lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. No Settlement Class Members objected to the Settlement.[4] *See* Ex. 2, Settlement Administrator Decl. ¶ 14. This is powerful evidence of the Settlement Class's support for the Settlement. *McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations

---

Feb. 28, 2022) (approving reversionary fund, which capped class member payments at $375 or $190 depending on date of finger scan and reverted millions of dollars in unclaimed funds to defendants); *Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262 (Il. Cir. Ct. Cook Cnty. July 30, 2019) (approving claims-made reversionary fund of $270 per class member, reverting the remainder to defendant). Here, no funds will revert to Defendant and all uncashed checks will be distributed to the State of Illinois Unclaimed Property Fund subject to approval by the Court. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶¶ 36, 37, 129 N.E.3d 1197, 1207.

[4]      If a Settlement Class Member submits an objection before the final approval hearing, Settlement Class Counsel will file it with the Court.

omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001).

### D. *Wong* Factor 5: Opinion of Competent Counsel

Plaintiff's counsel recommends the Settlement be approved. *See* Ex. 2, Werman Decl. ¶ 17. That recommendation is based on Settlement Class Counsel's substantial experience in class litigation, including dozens of similar BIPA class actions. That knowledge and experience were applied in analyzing the possible recovery against the risk, cost and delay explained above. *Id.,* ¶ 8. Therefore, this factor weighs strongly in favor of approval. *See Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) ("The court also was entitled to 'rely heavily on the opinion of competent counsel' advanced by the proponents") (citation omitted).

### E. *Wong* Factor 6: Stage of Proceedings and the Amount of Discovery Completed

This case settled after briefing and a ruling on Defendant's motion to dismiss (ECF No. 50), serving and obtaining written discovery from Defendant, after taking and defending depositions, including Plaintiff, former plaintiff Nivea Lenoir, and a Rule 30(b)(6) deposition, and fully briefing Plaintiff's motion for class certification. The case was sufficiently advanced for the Parties to form a realistic assessment of the potential recovery against the risk of loss.

### F. Alternatively, or Cumulatively, Approval Should Be Granted According to the Fed. R. Civ. P. 23(e)(2) Factors

#### 1. Class Representatives and Class Counsel have Adequately Represented the Class

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and

class counsel fought vigorously in the litigation. *Snyder*, 2018 WL 4659274, at \*3. In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *Id.* at \*4; *see also In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011) (St. Eve, J.) (approving settlement where the parties had not conducted any formal discovery but engaged in considerable informal discovery). This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *See Wong*, 773 F.3d at 863.

The knowledge and negotiating position, vigor, participation, and conduct of Plaintiff and Settlement Class Counsel have not changed since this Court granted preliminary approval. Plaintiff's interest has remained aligned with the Settlement Class through the litigation, settlement and Notice process. Without Plaintiff Starts stepping up to represent the class and taking on these tasks, including answering written discovery and sitting for her deposition, the relief secured for the Settlement Class likely would not have been possible. Given her efforts and aligned interest with the Settlement Class, there can be no doubt that she acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Settlement Class Counsel worked vigorously to protect the interests of the Settlement Class and ensure that the Settlement Class was well represented. The considerable amount of investigation and discovery completed by Plaintiff's counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions.

### 2. The Settlement Is the Product of ability-Length, Non-Collusive Negotiations

Under Rule 23(e)(2), a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The Parties reached a Settlement after an

initially unsuccessful day-long mediation with retired Magistrate Judge Morton Denlow; it was only later, with Judge Denlow's assistance, that agreement was reached. Ex. 2, Werman Decl., ¶10. The Settlement was a result of non-collusive negotiations. *Id*.

### 3. The Settlement Treats Members of Respective Settlement Classes Equally

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that the Settlement Class here has the same BIPA claims, the Settlement treats each of them identically and provides equal settlement payments to all Settlement Class Participants. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

### 4. Relief Secured for the Settlement Class Warrants Final Approval

The final and most important factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment. *Id.* This analysis necessarily encompasses two of *Wong* factors. The first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 958 (internal quotations omitted).

Defendant raised numerous defenses to Plaintiff's claims. Based on those defenses, Defendant could have defeated or greatly reduced any recovery in this lawsuit, and could have defeated Plaintiff's pending Motion for Class Certification. Apart from the merits of Defendant's

11

defenses, additional litigation would have carried expense and delay. Instead of further risks and delay, this Settlement offers substantial value relative to the strength of Plaintiff's claims.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii) and the first Seventh Circuit factor. An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:53. This Settlement requires full distribution of the Net Fund directly to Settlement Class Members with no reversion. This is an optimal method of distributing relief to the class and fully satisfies Rule 23(e)(2)(C)(ii).

The final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). As Settlement Class Counsel explained in their request for fees and costs, ECF No. 116, their request for one-third of the Gross Fund is in-line with the Seventh Circuit precedent and is equal to or below the fees awarded in other class settlements, including similar BIPA class settlements. ECF No, 116, p. 9-10. The Settlement also provides for payment of any attorneys' fees after final approval at the same time as payments to Settlement Class Members. Ex. 1, Settlement Agreement § IV.5(h). Settlement Class Counsel received no special priority. As a result, Rule 23(e)(2)(C)(iii) supports final approval.

## VI.    Conclusion

Because the Settlement makes significant monetary relief available to Settlement Class Members who might have recovered nothing without the Settlement, the Court should grant final approval and enter the proposed Final Approval Order, which will be submitted to the Court via its proposed order email address.

Dated: December 13, 2023                    Respectfully submitted,

*/s/ Douglas M. Werman*

Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
John Frawley
jfrawley@flsalaw
**WERMAN SALAS P.C.**
77 W. Washington St., Ste 1402
Chicago, IL 60602
(312) 419-1008

*Attorneys for Plaintiff and*
*Settlement Class Members*

13